UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

KRAIG S. IVIE,

   Plaintiff,

v.

DIVERSIFIED LENDING GROUP,
INC. and JACKSON NATIONAL
LIFE INSURANCE CO.,

   Defendants.
               /

Case No. 1:09-CV-751

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Kraig S. Ivie, filed this action against Defendants, Diversified Lending Group, Inc. ("DLG") and Jackson National Life Insurance Company ("Jackson"), seeking to recoup losses arising out of a purportedly fraudulent investment scheme in which he invested $2.2 million. Jackson has filed a motion to dismiss all claims against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The fifteen-count complaint charged Jackson with aiding and abetting DLG's breach of fiduciary duty (Count 2); negligent misrepresentation (Count 4); negligence (Count 5); breach of contract (Count 8); breach of the duty of good faith and fair dealing (Count 9); fraudulent misrepresentation (Count 11); silent fraud (Count 12); civil conspiracy (Count 13); and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(a), (b), and (c) (Count 15). On June 7, 2010, this Court issued an Order denying the motion with regard to the RICO claim, but did not reach the state law claims.[1] For the reasons set forth below, the Court will grant in part and deny in part the motion. The Court will deny the motion as to Counts 2, 8 and

---

[1] The Order also granted Jackson's motion to stay the proceedings pending a decision of the Judicial Panel on Multidistrict Litigation as to whether it should transfer and consolidate this suit with four others arising out of the same scheme. Transfer has since been denied and the stay lifted. *In re Diversified Lending Grp, Inc., Secs. Litig.*, 732 F.Supp.2d 1377 (J.P.M.L. 2010).

13 – for aiding and abetting breach of fiduciary duty, breach of contract, and civil conspiracy. The Court will grant the motion and dismiss the remaining claims, Counts 4, 5, 9, 11, and 12.

## BACKGROUND

The following factual background comes from the allegations in Ivie's complaint and the attached exhibits.[2]

Ivie, while president and owner of American Benefits Concepts, Inc. ("ABC"), first learned of DLG sometime in early 2007 through one of his employees, Jason E. Juberg. Two representatives of DLG had approached Juberg about "marketing the DLG opportunity" and provided Juberg with DLG marketing materials. In September of 2007, Ivie sold ABC to Juberg and Matthew Harper, another ABC employee, who thereafter began to market DLG investments. Juberg reiterated to Ivie that DLG offered what appeared to be a safe and profitable investment, particularly its 9% reinsured investment note. The complaint alleges that Ivie also talked to a representative of DLG who informed him that "DLG was a safe and conservative investment because DLG invested in income-producing real estate, and because the 9% notes were guaranteed by an A+ rated insurance company that issued 'reinsurance' policies to reinsure" Ivie's principal investment. (Compl. ¶ 44.)

On September 27, 2007, Ivie invested $2.2 million in a 9% reinsured note, allegedly in reliance on DLG's representations that his principal investment would be reinsured by an A+ rated insurance company. The investment contract contained a "Reinsurance Endorsement," which read in pertinent part:

> When this endorsement is attached and executed by the company and contract owner it will amend the original contract from that of a corporate guarantee to a principal

---

[2]Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion under Fed. R. Civ. P. 12(b)(6), courts recognize an exception for documents attached to or referenced in the complaint. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

reinsured contract. The Principal amount of the investment will be insured by a AA Rated or better insurance company with the following conditions. The company will issue or cause to be issued a "Collateral Assignment" in the principal amount of the contract investment. . . . The owner of the contract will only have the right to call upon this collateral assignment at any time during the contract period if there is an uncured event of default by the company.

(Compl. Ex. L.)

On November 14, 2007, DLG executed a document entitled "Collateral Assignment," which assigned to Ivie DLG's interest in an annuity it had purchased from Jackson in the name of Bruce Friedman, DLG's CEO. (Compl. Ex. K.) The Collateral Assignment described the annuity as "Reference No.: 07-01408 – Not more than $2,200,000.00." (*Id.*) It also contained a disclaimer indicating that a copy would be sent to Jackson and that Jackson "assumes no responsibility as to the validity or legal effect of the assignment." (*Id.*) The annuity itself was issued by Jackson to DLG on November 8, 2007, with an initial premium of only $220,000.00 – ten-percent of Ivie's initial investment amount. (Jackson Reply, Ex. A.)[3]

The complaint asserts that DLG's investment scheme was entirely fraudulent. It did not invest the money as it represented, but rather diverted substantial sums to Friedman's personal use and in ventures unrelated to mortgage loans or income-producing property. DLG also issued fraudulent monthly and quarterly statements, which falsely indicated that the investments were performing as expected and that DLG was profiting. DLG's "reinsurance" of the 9% notes was entirely fraudulent because the annuities DLG assigned to "reinsure" the notes were worth but a

---

[3] The annuity contract itself was not attached to the Complaint, although referenced therein. Jackson attached a copy to its motion to dismiss and the Court finds that it may consider it without having to convert this motion into one for summary judgement. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (explaining that where a document central to the plaintiff's claim is referred to in the complaint, but not attached thereto, the defendant may submit an authentic copy and the court may consider it on a motion to dismiss). The Court rejects Ivie's arguments as to why it should not consider the annuity contract. Although he asserts that it is not central to his claim, Ivie's breach of contract claim is based on the idea that DLG and Jackson entered into an annuity contract, DLG assigned its interest in that contract to Ivie, and now Jackson is refusing to pay Ivie the value of the annuity. (Compl. ¶¶ 108-113.) And although he states that he "disputes the authenticity of the annuity," Ivie provides no reason why.

fraction of the total investment amount but investors were made to believe otherwise due to the language in the assignment that the annuity was worth "not more than" the amount of the investor's principal investment. In short, DLG was but a Ponzi scheme. DLG survived only because it obtained money from new investors to pay the withdrawals of prior investors.

Regarding Jackson, the complaint alleges that at the time the Collateral Assignment was issued to Ivie, Jackson knew or should have known that DLG had marketed the assignment as "reinsurance" of Ivie's investment even though the annuity's value was but a fraction of the total investment. In March of 2007, well before Ivie invested in DLG, Jackson had sent a cease and desist letter to DLG directing DLG to stop representing that Jackson was a reinsurance company or to start using a disclaimer in all of its materials that refer to Jackson making clear that Jackson does not reinsure or underwrite DLG's investments. (Compl. Ex. M.) Even though DLG never complied with the cease and desist order, Jackson continued to conduct business with DLG and issue policies like the annuity assigned to Ivy. In short, Jackson was complicit in DLG's scheme, and profited therefrom.

In December of 2008, Ivie attempted to withdraw $120,000.00 from his account with DLG, to which he alleges that he was entitled, but DLG refused to pay. Ivie also asserts that he requested that Jackson pay him "the amounts that he was due," but Jackson also refused, although Ivie does not state when this demand was made. (Compl. ¶ 70.) At some point, Ivy also inquired into the value of the annuity and Jackson responded with a letter, dated December 22, 2008, explaining that it does not "track the assignment value" and that Ivie would have to contact the policy owner for that information. (Compl. Ex. N.) Finally, on February 25, 2009, "Ivie called and had a conversation with Jackson's in-house counsel, who advised that she had been 'concerned' about the DLG/[Jackson] connection for approximately three years, and the fact that the Jackson Assignments

were valued at only 10% of the underlying investment with DLG." (Compl. ¶ 65.) In August 2009, Ivie filed a fifteen-count complaint against both DLG and Jackson. Jackson has filed a motion to dismiss all claims against it. The Court has already denied the motion as to the RICO claim.

### MOTION STANDARD

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Pursuant to Rule 9(b), a party claiming fraud "must state with particularity the circumstances constituting fraud," although "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Sixth Circuit interprets Rule 9(b) as requiring a

plaintiff to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993). In other words, a party alleging fraud must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana*, 547 F.3d 564, 569-70 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)).

ANALYSIS

**BREACH OF CONTRACT (COUNT 8)**

To state a claim for breach of contract, the plaintiff must plead the existence of a valid contract, its terms, that the defendant breached the terms, and that the breach caused the plaintiff's injury. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (applying Michigan law). Ivie alleges, and Jackson does not contest, the existence of a valid contract between Jackson and DLG for an annuity, and that Ivie was assigned DLG's rights under that contract. Although lacking in specifics, Ivie also alleges that Jackson breached the contract by refusing to pay Ivie the "value of the annuity" upon his demand. The parties dispute the proper "value of the annuity"– Jackson maintains that it "has been, and remains, fully prepared to pay Ivie any and all sums provided for under the annuity," (Def.'s Mot. at 9), but Ivie seeks the $2.2 million "that he understood" the annuity to be worth. (Pl.'s Resp. at 8.) Yet, dismissal under 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). The Court finds that Ivie has pled sufficient facts to state a claim for breach of contract. The proper scope of his relief is another question.

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING (COUNT 9)**

Ivie also asserts a separate claim against Jackson for breach of the duty of good faith and fair dealing in relation to the annuity contract. This claims must fail, however, because "Michigan does not recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing." *Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 197, 480 N.W.2d 910, 911 (1991); *see also Spizizen v. Nat'l City Corp.*, No. 09-11713, 2009 WL 3757085, at *6 (E.D. Mich. Nov. 10, 2009) ("[T]here is no independent cause of action under Michigan law for breach of an implied covenant of good faith and fair dealing" (internal quotations omitted)); *Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 718 (E.D. Mich. 2005) ("Michigan does not, however, recognize a claim for breach of an implied covenant of good faith and fair dealing separate from an action on the underlying contract."); *Jarbo v. BAC Home Loan Serv.*, No. 10-12632, 2010 WL 5173825, at *15 (E.D. Mich. Dec. 15, 2010) (same).

**THE ECONOMIC LOSS DOCTRINE**

Jackson argues that Ivie's claims for negligence, negligent misrepresentation, silent fraud, fraudulent misrepresentation, and civil conspiracy are barred by Michigan's economic loss doctrine. The economic loss doctrine bars a party from recovering in tort economic losses suffered because of a breach of duty assumed only by contract. *Huron Tool & Eng'g Co. v. Precision Consulting Servs. Inc.*, 209 Mich. App. 365, 374-75, 532 N.W.2d 541, 546 (1995) (citing *Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 530, 486 N.W.2d 612, 619 (1992)). Where a contractual relationship exists, the economic loss doctrine prohibits a party to the contract from bringing tort claims that are factually indistinguishable from breach of contract claims. *Id.* Michigan courts have not limited the doctrine to contracts for the sale of goods. *See, e.g.*, *Huron Tool*, 209 Mich. App. at 374, 532 N.W.2d at 546 ("Although the Supreme Court's discussion of the economic loss

7

doctrine in *Neibarger* was linked closely to the UCC context of the case, the doctrine is not limited to the UCC."); *see also Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 454 Mich. 65, 84-85, 559 N.W.2d 647, 658 (1997) (applying the economic loss doctrine to a telephone service contract) (citing *Corl v. Huron Castings, Inc.*, 450 Mich. 620, 626-28, 544 N.W.2d 278, 281 (1996) (refusing to apply the collateral source rule for tort damages to an employment contract)), *but see Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 550 (6th Cir.1995) (narrowly construing *Neibarger* to only apply to contracts involving the sale of goods).

The economic loss doctrine does not bar Ivie from asserting his tort claims. Although a contractual relationship existed between Ivie and Jackson (by the way of the Collateral Assignment, which assigned to Ivie DLG's rights under the annuity contract), Ivie asserts tort claims that are factually distinguishable from his breach of contract claim and which involve duties separate and apart from those duties Jackson assumed under the annuity contract. That is, the tort claims Ivie asserts would exist even if Jackson never breached the annuity contract. *See Brock v. Consol. Biomedical Labs.*, 817 F.2d 24, 25 (6th Cir. 1987) ("[I]f a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not.") (quoting *Hart v. Ludwig*, 347 Mich. 559, 565, 79 N.W.2d 895, 898 (1957)).

**NEGLIGENCE (COUNT 5)**

To state a claim for negligence on which relief may be granted, a plaintiff must allege: (1) that the defendant owed him a duty of care; (2) that the defendant breached that duty; (3) that the plaintiff suffered injury; and (4) that the defendant's breach caused the plaintiff's injury. *Henry v. Dow Chem. Co.*, 473 Mich. 63, 71-72, 701 N.W.2d 684, 688 (2005). Jackson argues that Ivie has failed to properly allege both the duty and causation elements.

"[T]he question of whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides after assessing the competing policy considerations for and against

recognizing such a duty." *In re Certified Question from Fourteenth Dist. Ct. of App. of Texas*, 479 Mich. 498, 504-05, 740 N.W.2d 206, 210 (2007) (quoting *Friedman v. Dozorc*, 412 Mich. 1, 22, 312 N.W.2d 585, 590 (1981)). In making the determination, a court considers "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id.* at 515, 740 N.W.2d at 216 (quoting *Dyer v. Trachtman*, 470 Mich. 45, 49, 679 N.W.2d 311, 314 (2004)). Ivie cites no authority establishing that Jackson owed him a duty under the circumstances presented here. Instead, he urges the Court to impose a duty heretofore unrecognized by comparing Jackson to the good Samaritan in *Sweet v. Ringwelski*, 362 Mich. 138, 143, 106 N.W.2d 742, 745 (1961), who waved a ten-year old girl across the street despite the existence of oncoming traffic. The Court declines the invitation.

Ivie and Jackson had but a tenuous relationship; it was DLG who was Jackson's client, not Ivie. Assuming Jackson was aware that DLG was representing to clients that the annuity was reinsurance of their entire principal investment when it was actually but a fraction, the foreseeability factor leans in favor of imposing a duty. Yet, foreseeability is not dispositive of the issue because the "other considerations may be, and usually are, more important." *In re Certified Question*, 479 Mich. at 508, 740 N.W.2d at 212. Indeed here, the third factor – the burden on the defendant – weighs strongly against imposing a duty. To do so would mean that every entity whose products may be collaterally assigned would need to ascertain to whom any such assignment was being made and for what purpose, so as to determine whether there is a risk of harm to the assignee. The Court declines to impose such a duty. Because the Court finds that Jackson did not owe a duty to Ivie, it need not consider whether Ivie sufficiently alleged causation.

**NEGLIGENT MISREPRESENTATION (COUNT 4)**

"A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying

9

party a duty of care." *Fejedelem v. Kasco*, 269 Mich. App. 499, 502, 711 N.W.2d 436, 437 (2006) (quoting *Mable Cleary Trust v. Edward-Marlah Muzyl Trust*, 262 Mich. App. 485, 502, 686 N.W.2d 770, 783 (2004)) (internal quotation marks omitted). The Court finds that Ivie has not stated a claim for negligent misrepresentation for two reasons. First, as set forth above, he has not established that Jackson owed him a duty of care. And second, as set forth below, he has not alleged that Jackson actually made a misrepresentation.

**FRAUDULENT MISREPRESENTATION (COUNT 11)**

To state a claim of fraudulent misrepresentation, a plaintiff must allege, among other things, a false representation by the defendant. *Hord v. Envtl. Research Inst. of Mich.*, 463 Mich. 399, 411, 617 N.W. 2d 543, 550 (2000). The Court finds that Ivie has not alleged fraudulent misrepresentation with the particularity required by Rule 9(b) because he has failed to allege a misrepresentation *by Jackson*.

The alleged misrepresentation here is the statement in the Collateral Assignment that the annuity was worth "not more than" $2.2 million, when it was actually worth only ten-percent of that amount. (Compl. ¶¶ 128-130.) The complaint labels the Collateral Assignment the "Jackson Assignment" and repeatedly refers to it as having been "issued" by Jackson (Compl. ¶ 54), but there is no allegation that Jackson made the particular statement at issue. On the contrary, the Collateral Assignment itself makes clear that it was "issued" by DLG and merely processed (or accepted) by Jackson. The disclaimer on the face of the assignment explains that a copy will be sent to Jackson and that Jackson assumes no responsibility as its validity or legal effect. The "not more than" language is not part of the pre-printed form, but rather located within a box to be filled in by the assignor. Moreover, the letter dated November 27, 2007, that Jackson sent to Ivie, encloses a copy

of the collateral assignment, which it explains Jackson had recently "*received and processed*." (Compl. Ex. O.)

Ivie does adequately allege two representations on the part of Jackson: (1) the December 22, 2008 letter, which Jackson sent to Ivie upon Ivie's inquiry into the value of the annuity, explaining that Jackson does not "track the assignment value" and that Ivie would have to contact the policy owner for that information; and (2) the February 25, 2009, telephone conversation in which Jackson's in-house counsel expressed her "concern" about the DLG/Jackson relationship and the fact that the assignments were valued at only "10% of the underlying investment." Neither of these statements is false, however. Because Ivie has not alleged a misrepresentation by Jackson, his claim for fraudulent misrepresentation must fail.

**SILENT FRAUD (COUNT 12)**

To state a claim for silent fraud, otherwise known as fraud by nondisclosure or fraudulent concealment, a plaintiff must allege that the defendant suppressed a material fact that he had a duty to disclose. *Bergen v. Baker*, 264 Mich. App. 376, 382, 691 N.W.2d 770, 775 (2004) (citing *M & D, Inc. v. McConkey*, 231 Mich. App. 22, 28-29, 585 N.W.2d 33, 37 (1998)). Further, mere nondisclosure is insufficient – "there must be some type of misrepresentation, whether by words or action, in order to establish a claim of silent fraud." *Id.*

The Court finds that Ivie has failed to state a claim for silent fraud. First, as set forth above, he has not alleged an actual misrepresentation by Jackson. Second, even if he had, Jackson was under no duty of disclosure. The Court has already determined that Jackson did not owe Ivie a duty of care. And although a duty to disclose may arise where the plaintiff makes a direct inquiry to which the defendant replies with a statement that is truthful, but misleading because it omits material

information, Ivie has not alleged such a situation here. Although he made direct inquiries to Jackson as to the value of the annuity, Jackson's responses were not misleading.

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY BY DLG (COUNT 2)**

A claim of aiding and abetting breach of fiduciary duty requires the plaintiff to allege "(1) breach of a fiduciary duty by a person, (2) the defendant's knowledge and substantial assistance or encouragement of the person's breach of fiduciary duty, and (3) resulting harm." *Gold v. Deloitte & Touche*, 411 B.R. 542, 552 (E.D. Mich. 2009) (citing *L.A. Young Spring & Wire Corp. v. Falls*, 307 Mich. 69, 106-07, 11 N.W.2d 329, 343 (1943); Restatement (Second) of Torts § 876(b) (1979)). The Court finds that Ivie has sufficiently alleged aiding and abetting breach of fiduciary duty.

As to the first element, Ivie alleges that DLG breached its fiduciary duty by, among other things, misrepresenting the Collateral Assignment as "reinsurance" of Ivie's entire principal investment. (Compl. ¶ 73.) As to the second, Ivie alleges that Jackson had actual knowledge that DLG was misrepresenting the Collateral Assignments to be reinsurance, vis-a-vis the cease and desist letter, even if not of the full details of the underlying Ponzi scheme. *See Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 536 (6th Cir. 2000) (explaining that, under Ohio law, although the plaintiff must allege that the aider and abetter had actual knowledge of the primary party's breach, the aider and abetter "need not know all of the details of the primary party's scheme for liability to attach"). Ivie also alleges substantial assistance. Absent a duty of disclosure, which the Court has already found did not exist, Jackson's mere failure to alert Ivie that the annuity was not reinsurance cannot amount to substantial assistance. *See Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541 (W.D. Mich. 1998) (explaining that, under New York Law, absent a confidential or fiduciary relationship giving rise to a duty of disclosure, silence alone cannot be substantial assistance as

required of aider or abetter liability); *El Camino Res., LTD v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 914 (W.D. Mich. 2010) ("Silence, inaction, or a failure to investigate does not constitute substantial assistance."). However, Ivie also alleges that Jackson entered into the annuity contract with DLG and processed the Collateral Assignment, *knowing* that DLG was representing to Ivie that the Collateral Assignment was "reinsurance" for his entire principal investment. Even the supplying of routine services can constitute substantial assistance if done with knowledge that such services are assisting the primary actor's tortious conduct. *See Aetna*, 219 F.3d at 537 (finding the "substantial assistance" element satisfied when a bank issued a four-day loan knowing that it was being used to wrongfully manipulate a construction company's financial position in order to induce the plaintiff-surety to bond the company's construction projects); *El Camino*, 722 F. Supp. 2d at 914 (supplying routine banking services can qualify as substantial assistance where "the bank actually knew that those services were assisting the customer in committing a specific tort"). Finally, as to the last element, although Ivie had already invested in DLG when Jackson issued the annuity and processed the Collateral Assignment, Ivie asserts that he relied on the Collateral Assignment in holding onto the 9% note. Had he learned that Jackson was not reinsuring the full value of his principal investment, Ivie asserts he would have withdrawn his investment immediately. (Pl.'s Reply at 17.)

**CIVIL CONSPIRACY (COUNT 13)**

To state a claim for civil conspiracy, the plaintiff must allege "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Temborius v. Slatkin*, 157 Mich. App. 587, 599, 403 N.W.2d 821, 827-88 (1986). "Direct proof of agreement is not required, however, nor is it

necessary that a formal agreement be proven. It is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact." *Id.* Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference." *Id.* The Court finds Ivie's allegations sufficient to state a claim of civil conspiracy as well. Ivie alleges that Jackson profited by continuing to do business with DLG – issuing annuity policies to DLG and processing the Collateral Assignments of those policies to DLG clients, like Ivie – *knowing* that DLG was misrepresenting the assignments to be reinsurance of the entire principal investment. The Court finds this to be sufficient circumstantial evidence to establish an agreement.

## Conclusion

For the reasons set forth above, the Court will grant in part and deny in part Jackson's motion to dismiss all claims against it. The motion will be granted as to Counts 4, 5, 9, 11, and 12 – for negligent misrepresentation, negligence, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, and silent fraud – which will be dismissed. The motion will be denied as to Counts 2, 8, and 13 – for aiding and abetting breach of fiduciary duty, breach of contract, and civil conspiracy.

A separate Order will issue.


Dated: March 17, 2011                       /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE